BLAUFIELD v. STATE.

(*Knoxville.*   November   20,   1899.)

1. TAXATION.   *Imposition of privilege tax does not legalize an unlawful business.*

The imposition of a privilege tax upon a business—*e. g.*, the sale of cigarettes—that is forbidden and punished by the criminal laws, does not operate to render such business legal, or to entitle one who has paid the tax and obtained license therefor to pursue such business in violation of the criminal laws. (*Post, pp.* 597–600.)

Constitution construed: Art. II., § 28.

Acts construed: Acts 1897, Ch. 30; Acts 1899, Ch. 432.

Cases cited: Palmer & Cartwright *v.* State, 88 Tenn., 563; State *v.* Schlier, 3 Heis., 283; French *v.* Baker, 4 Sneed, 193; Robertson *v.* Henegar, 5 Sneed, 258.

2. STATUTES.   *Repeal.*

Repeals of statutes by implication are not favored.   The repugnancy between the two statutes must be very plain and unavoidable.   Both their terms and necessary operation must be wholly irreconcilable.   (*Post, pp.* 600–602.)

Cases cited: Durham *v.* State, 89 Tenn., 728; Frazier *v.* Railroad, 88 Tenn., 140; Reelfoot Lake District *v.* Dawson, 97 Tenn., 152; Austin *v.* State, 101 Tenn., 573.

3. SAME.   *Same.   Case in judgment.*

Acts 1898, Ch. 30, forbade, under penalty, the sale of cigarettes. Acts 1899, Ch. 432, imposed a privilege tax on dealers in cigarettes "not sold in violation of criminal law." The former statute was an exercise of police power; the latter an exercise of the taxing power. *Held:* That Act of 1899 did not repeal Act of 1897 by implication. (*Post, pp.* 600–603.)

Acts construed: Acts 1897, Ch. 30; Acts 1899, Ch. 432.

Case cited: Austin *v.* State, 101 Tenn., 573.

19 P—38

Blaufield *v.* State.

4. CIGARETTES. *Not legitimate articles of commerce.*

The doctrines of the case of Austin *v.* State, 101 Tenn., 566, hold-
ing that cigarettes are not legitimate articles of commerce, and
that the ten-cigarette package is not the original package of
commerce, are reaffirmed. (*Post, pp. 602, 603.*)

FROM KNOX.

Appeal in error from Circuit Court of Knox
County. JOSEPH W. SNEED, J.

SANSOM, WELCKER & PARKER for Blaufield.

ATTORNEY-GENERAL PICKLE for State.

SAMUEL G. SHIELDS, Sp. J. The plaintiff in
error, who is a tobacco merchant doing business
in Knoxville, Tenn., has been indicted and con-
victed in the Circuit Court of Knox County for
selling cigarettes in violation of Chap. 30, Sec. 1,
of the Acts of 1897, which is as follows:

"SECTION 1. *Be it enacted by the General As-
sembly of the State of Tennessee,* That it shall
be a misdemeanor for any person, firm, or cor-
poration to sell, offer to sell, or to bring into the
State for the purpose of selling, giving away, or
otherwise disposing of any cigarettes, cigarette paper,
or substitute for the same; and a violation of

Blaufield v. State.

any of the provisions of this Act shall be a mis-demeanor punishable by a fine of not less than $50."

The record discloses that on the 15th day of June, 1899, the plaintiff in error applied to the Clerk of the County Court of Knox County for license to exercise the privilege of a retail dealer in cigarettes under the Revenue Act of 1899, being Sec. 4 of Chap. 432 of said Act. He paid the Clerk the privilege tax imposed upon the business of selling cigarettes by said Act, and the Clerk issued to him a license to exercise the privilege of a retail dealer in cigarettes for three months from the 15th day of June, 1899, and the said Blaufield posted said license in his tobacco store, on Gay street, in the city of Knoxville. On the 20th day of June, 1899, the plaintiff in error sold to one C. H. McGhee a package of cigarettes, which had been previously sent to the said Blaufield by mail by the American Tobacco Company, from its factory in the State of New York, with no wrappings around it. The revenue stamp upon said package of cigarettes is used as the seal, and it is necessary to break the stamp to open the package. This package contains ten cigarettes, and complies in all respects with the internal revenue laws of the United States in regard to the way in which cigarettes shall be packed.

The plaintiff in error insists that he holds the

license of the State of Tennessee to carry on the business of a retail dealer in cigarettes, and that being the licensee of the State, he has the right to do everything that is proper and necessary for the enjoyment of his license, and, therefore, has the right to sell cigarettes to his customers without subjecting himself to prosecution under the criminal laws of the State. He seeks to interpose his said license as a defense to this criminal charge. He insists, further, that inasmuch as Chap. 30 of the Acts of 1897, above quoted, absolutely prohibits the sale of cigarettes in the State in terms as broad as the English language can make it, that the Revenue Act of 1899, declaring the right to sell cigarettes to be a privilege, and taxing it as such, by necessary implication repeals the criminal Act of 1897.

Sec. 4 of the Revenue Act of 1899, after enumerating the vocations, occupations, and business which may be carried on only after a license has been procured by the payment of a privilege tax, contains the following:

"CIGARETTES.

"(Not sold in violation of criminal law.)

"Wholesale dealers in cigarettes, each, per year, $50.

"Retail dealers in cigarettes, each, per year, $10."

Sec. 15 of said Act declares the exercising of any of the privileges set out in Sec. 4 of the

Act, without first paying the taxes prescribed for the exercise of the same, to be a misdemeanor punishable by fine of not less than $50, nor more than $500 for each day said privilege is exercised without license.

The plaintiff in error is mistaken in his assumption that one who pays this privilege tax to the State thereby becomes a licensee of the State, and necessarily has the right to do and perform all things proper for the enjoyment of his license.

Sec. 28 of Art. II. of our Constitution provides that the Legislature shall have the power to tax merchants, peddlers, and privileges in such manner as they may from time to time direct, but this clause of the Constitution does not provide that, upon taxing a vocation or business as a privilege, it shall thereby authorize a party paying this tax to carry on that business in violation of the criminal laws of the State. It is true, as contended by defendant's counsel, that the word "privilege" has been defined by this Court, in several cases, to be the exercise of an occupation or business which requires a license from some proper authority designated by a general law, and not open to all or any one without such license. *The State* v. *T. M. Schlier,* 3 Heis., 283; *French* v. *Baker,* 4 Sneed, 193; *Robertson* v. *Henegar,* 5 Sneed, 258. But we have no decision that declares, in terms, that a license

obtained for execising any of the avocations de-
clared · to be privileges by our Legislature will
authorize the licensee to carry on any such busi-
ness in violation of any of the criminal laws of
the State. The tax upon the privilege of selling
cigarettes, "not sold in violation of criminal law,"
is, at most, a tax assessed upon an unlawful oc-
cupation, and it is expressly held, in the case
of *Palmer & Cartwright* v. *The State,* 4 Pickle,
563, that taxation so imposed will not be con-
strued to operate as a license legalizing such· un-
lawful business. "Taxation, even under the form
of a privilege tax, does not necessarily operate to
license the business. The Constitution of Michigan
prohibited the passing of any law licensing liquor
dealing. A specific tax was assessed upon liquor
dealers. It was held by the Supreme Court of
that · State, Judge Cooley delivering the opinion,
not to be in its legal effect · a license tax, or in
any way to sanction, authorize, or countenance the
business." 4 Pickle, 563; *Youngblood* v. *Sexton,*
32 Mich., 406.

An instance of a license in terms which does
not carry with it protection is that of the Federal
tax upon · the occupation of liquor dealing in
States or localities where such traffic is illegal.
*License Tax Cases,* 5 Wall., 462. Concerning
this class of cases, Mr. Cooley, in his work on
Constitutional Limitations, says: "These burdens
are imposed in the form of what are called li-

cense fees; and it has been claimed that when a party paid the fee he was thereby licensed to carry on the business, despite the regulations which the State Government might make upon the subject. This view, however, has not been taken by the Courts, who have regarded the congressional legislation imposing a license fee as only a species of taxation, without the payment of which the business could not be carried on, but which, nevertheless, did not propose to make any business lawful which was not lawful before, or to relieve it from any burdens or restrictions imposed by the regulations of the State." Cooley on Const. Lim., 721.

We conclude, therefore, that one who pays a privilege tax to the State does not thereby become a licensee of the State, in the sense that he has the right to do and perform all things proper for the enjoyment of his license, in utter disregard of the criminal laws of the State.

If the position taken by the plaintiff in error is maintainable, it could be argued with much more force and plausibility that the liquor dealer's license authorizes him to sell liquor to minors, or upon Sundays, or within four miles of a schoolhouse, or on election days, for none of the statutes declaring the business of selling liquor to be a privilege, and requiring a license for its exercise, contain any proviso that it shall not be sold in violation of criminal law, such as is

found in the Act of 1899 in reference to the sale of cigarettes. If the license would authorize the licensee to sell in violation of one criminal law, it would authorize him to sell in violation of all criminal laws, and the validity of the statutes regulating the sale of liquors, and making it a criminal offense to sell to minors, on Sundays, or within four miles of a schoolhouse, has never been questioned, and could not, under our law, be successfully attacked.

The contention of the plaintiff in error that the Act of 1897 is repealed, by necessary implication, by the Act of 1899, or that the Legislature intended to repeal the former Act by the later one, and to place cigarettes upon the list of commodities which might be sold in the State of Tennessee under certain conditions and with certain restrictions, is also unsound.

It is a familiar and universal rule that repeals of statutes by implication are not favored. The repugnancy between the two statutes must be very plain and unavoidable. Both the terms and the necessary operation of the two Acts must be incapable of reconciliation before the older Act will be repealed by the later one, for the reason that statutes are only held to be repealed by implication because it cannot be supposed that the lawmaking power intended to enforce laws which are contradictions. *Durham* v. *The State,* 5 Pickle,

728; *Frazier* v. *Railroad,* 4 Pickle, 140; Suther-
land on Statutory Construction, Sec. 138.

When these rules are applied to the two Acts
in question, it is manifest that the Revenue Act
of 1899, making the selling of cigarettes a priv-
ilege, when "not sold in violation of criminal.
law," is not so repugnant to the Act of 1897
as to repeal it by implication. The Act of 1897
is a police regulation, passed in the exercise of
the State's power and duty to protect the health
of its citizens, while the Act of 1899 is purely
a revenue statute, passed alone to raise money for
the support of the State Government. The two
fields of legislation are entirely separate and dis-
tinct, and referable to different branches of legis-
lative power. *Reelfoot Levee District* v. *Dawson,*
97 Tenn., 152. No Act passed on the one sub-
ject will in any manner affect an Act on the
other subject, unless obviously so intended. *Aus-
tin* v. *State,* 101 Tenn., 573, 574. Under a
proper construction of the Revenue Act, the two
Acts are not repugnant at all, for the selling of
cigarettes is only declared to be a privilege when
not sold in violation of the criminal laws of the
State.

It is also perfectly manifest that the Legisla-
ture did not intend, in this indirect way, and by
a statute passed for an entirely different purpose,
and in the exercise of a different legislative
power, to repeal such a positive and wholesome

law as that enacted by Chap. 30 of the Acts of 1897, and that, too, in the face of the recent decision of this Court, in executing the provisions of the Act of 1897, declaring cigarettes to be wholly noxious and deleterious to health, and not legitimate articles of commerce. Instead of showing an intention to repeal the Act of 1897, and to thereby make the sale of cigarettes lawful, this Revenue Act expressly repels any such intention by declaring that the sale of cigarettes shall only be taxed as a privilege when "not sold in violation of criminal law." The Legislature evidently had the Act of 1897 in mind when this revenue statute was passed, and incorporated into it this very extraordinary clause to expressly negative the idea that the Act of 1897 should be thereby repealed.

The plaintiff in error cannot, therefore, interpose his receipt for this tax, which appears to be in the form of a license, as a defense to the criminal charge made against him in this case.

It is next insisted in behalf of the plaintiff in error that the sale of cigarettes made in this case was a sale of an original package brought into the State from another State, and was not, therefore, illegal, as such sales are protected by Sec. 8, clause 3, of the Constitution of the United States. This question was expressly decided in the case of *Austin* v. *The State,* 17 Pickle, 566, where this Court held that cigarettes were not

Blaufield *v.* State.

legitimate articles of commerce. It is not necessary, therefore, to further discuss that question here.

The judgment of the Circuit Court will be affirmed with costs.